**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**WISCONSIN DEPARTMENT OF
WORKFORCE DEVELOPMENT,**

        **Creditor-Appellant,**

    v.                                      **Case No. 07-C-980
(Bankruptcy Case No. 07-22653
Adversary Proceeding No. 2007-02161)**

**ROSE M. RATLIFF,**

        **Debtor-Appellee.**

---

## DECISION AND ORDER

---

The Creditor-Appellant, Wisconsin Department of Workforce Development, ("Department") appeals the September 26, 2007, bankruptcy court order disallowing priority status for the Department's $17,075.35 claim for food stamp overpayments. The Department's claim arises from its determination that the Debtor, Rose M. Ratliff ("Ratliff"), received food stamp overpayments from May 2002 through December 31, 2006, due to her failure to report the presence of her ex-husband in her household during that time period.

The Department appeals from a final order of the bankruptcy court in a core proceeding under 28 U.S.C. § 157(b)(2)(B). Pursuant to 28 U.S.C. § 158(a)(1), this Court has jurisdiction to hear this appeal. The appeal is addressed in this Decision and Order.

*Standard of Review*

In considering a bankruptcy appeal, district courts review a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *In re Midway Airlines, Inc.*, 383 F.3d 663, 668 (7th Cir. 2004).

*Factual Background*

On March 9, 2007, the Milwaukee County Department of Human Services ("County") issued to Ratliff five separate food stamp overpayment notices totaling $17,066.00 for overpayments of food stamp benefits commencing on May 1, 2002, and ending on December 31, 2006. (Docket No. 1, R.12, Ramsey Aff. ¶ 2, Ex. A.)[1] The County determined that Ratliff had failed to accurately report the members of her household. (*Id*.)

On March 14, 2007, Ratliff filed a petition for review of that determination pursuant to WIS. ADMIN. CODE [HA] § 3.03. (Docket No. 1, R. 12, Ramsey Aff. ¶ 3, Ex. B 1.) A hearing was held on April 11, 2007. (*Id*.)

On April 13, 2007, Ratliff filed a voluntary petition for bankruptcy under Chapter 13 of the Bankruptcy Code. (Docket No. 1, R. 4.)

On May 2, 2007, a State of Wisconsin Division of Hearing and Appeals Administrative Law Judge ("ALJ") issued a decision affirming the County's food stamp overpayment determination. (Docket No. 1, R. 12, Ramsey Aff. ¶ 3, Ex. B 1.) The ALJ found that Ratliff and her ex-husband were divorced in 1997, and that Ratliff had received

---

[1]The citations are to this Court's docket. The documents included in the record on appeal are attached to the Department's notice of appeal. (*See* Docket No. 1.) As an example, the citations to the record take the form "Docket No. 1, R. 12."

food stamps since prior to May 2002, for herself and her children. (Docket No. 1, R. 12, Ramsey Aff. ¶ 3, Ex. B 1.) The ALJ further found that the County correctly determined that, since at least May 2002, Ratliff's ex-husband had been living with Ratliff and her children. (Docket No. 1, R. 12, Ramsey Aff. ¶ 3, Ex. B 2-3.)

On June 26, 2007, the Department filed an unsecured priority proof of claim for $17,075.35[2] for the food stamp overpayment, specifying priority as a domestic support obligation under 11 U.S.C. § 507(a)(1)(A) or (B). (Docket No. 1, R. 6, 1.) The proof of claim states that the debt was incurred on April 9, 2007. (*Id*.)

On August 29, 2007, Ratliff filed an objection to the Department's claim of priority status. (Docket No. 1, R. 11.) Ratliff denied owing the debt, denied that food stamps are in the nature of alimony, maintenance and support, and contended that, based on the Department's claim that the debt was an overpayment and unnecessary, the debt could not be deemed in the nature of support for Ratliff or her dependants. (*Id*.)

The Department filed a "memorandum in support of finding [the] defendant's food stamp overpayment obligation a domestic support obligation and against finding [the] plaintiff's issuance of a decision on the defendant's appeal a violation of the stay order." (Docket No. 1, R. 12.)

On September 26, 2007, after a hearing, the bankruptcy court issued an order disallowing priority status to the Department's claim and sustaining Ratliff's objection to the claim. (Docket No. 1, R. 13 (*In re Ratliff*, No. 07-22653-svk, Order Disallowing Priority

---

[2] This amount is the principal amount of $17,066.00 plus 5% annual interest. (Docket No. 1, R.5, 3.)

Status (E.D. Bankr. Sept. 27, 2007)1.) The bankruptcy court quoted the definition of domestic support obligation set forth in 11 U.S.C. § 101(14A), a new term added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and stated that 11 U.S.C. § 507(a)(1) "suggests that the government cannot collect domestic support obligations unless it is filing a claim on behalf of 'a spouse, former spouse, or child of the debtor or of such child's parent, legal guardian, or responsible relative.'" (*Id.*) The bankruptcy court held that such language suggests that the term "domestic support obligation" is limited to "debt owed or recoverable by the former spouse of the debtor, in the nature of alimony, maintenance or support established under a separate agreement, divorce decree or property settlement." (*Id.*) (citing *In re O'Brien*, 339 B.R. 529 (Bankr. D. Mass 2006).)

The bankruptcy court determined that the food stamps were provided to Ratliff based on her eligibility for benefits. (Docket No. 1, R. 13, 1.) The bankruptcy court stated that only when the State discovered that Ratliff's husband apparently had been living with her, did the State notify Ratliff that her husband's income should have been included to determine her benefits and calculate that it had overpaid Ratliff about $17,000 in food stamps. (Docket No. 1, R. 13, 1.) The bankruptcy court concluded that the food stamp benefits were not akin to support that the State advanced on behalf of Ratliff to her ex-husband or child. (Docket No. 1, R. 13, 2.) The bankruptcy court queried "if the State did collect the food stamp overpayment as a priority claim to whom would the State distribute those payments under applicable nonbankruptcy law," referring to the final sentence of 11 U.S.C. § 507(a)(1), which states "any payments received by the government on a priority domestic support claim 'shall

4

be applied and distributed in accordance with applicable nonbankruptcy law,'" as suggesting that the government would either remit the support to the child or spouse of the debtor or repay itself for any support it had advanced. (Docket No. 1, R. 13,1.) As a result, it allowed the Department's claim as a general unsecured claim, not a priority claim. (Docket No. 1, R. 13, 2.)

On October 25, 2007, the bankruptcy court issued an order staying its order disallowing priority status of the claim. (Docket No. 1, R. 17.)

*Relevant Statutory Provisions*

Several statutory provisions are relevant to the issues presented by this appeal. "Domestic support obligation," is defined in Section 101(14A) of Title 11 of the United States Code as follows:

> [A] debt that accrues before, on, or after the date of the order for relief in a case under this title,[3] including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is –
>
> (A) owed to or recoverable by –
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> (ii) a governmental unit;[4]

---

[3] The commencement of a voluntary case under a chapter of Title 11 constitutes an order for relief under such chapter. *See* 11 U.S.C.A. § 301(b).

[4] Section 101(27) of Title 11 of the United States Code defines "governmental unit" as follows:

> United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of-
(i) a separation agreement, divorce decree, or property settlement agreement;
(ii) an order of a court of record; or
(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

Section 507(a)(1), which provides for priority treatment of certain "domestic support obligations," states:

a) The following expenses and claims have priority in the following order:

(1) First:

(A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law.

(B) Subject to claims under subparagraph (A), **allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition,** are assigned by a spouse,

6

former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative to a governmental unit (unless such obligation is assigned voluntarily by the spouse, former spouse, child, parent, legal guardian, or responsible relative of the child for the purpose of collecting the debt) **or are owed directly to or recoverable by a governmental unit under applicable nonbankruptcy law**, **on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition be applied and distributed in accordance with applicable nonbankruptcy law.**

(emphasis added.) Section 523(a)(5) also states that a discharge under 1328(b) of Title 11 does not discharge an individual debtor from any debt for a "domestic support obligation."[5]

*Analysis*

Domestic support obligations impact throughout the Bankruptcy Code on issues of discharge, the automatic stay, priorities, exemptions, the means test, and the calculation of disposable income in a Chapter 13 case. *See In re Deemer*, 360 B.R. 278, 280 (Bankr. N.D. Iowa 2007). Courts have held that "domestic support obligation" is "a term derived from the definition of a nondischargeable debt for alimony, maintenance, and support contained in the

---

[5]The legislative history for § 523(a)(5) states:

> Section 523(a)(5) is a compromise between the House bill and the Senate amendment. The provision excepts from discharge a debt owed to a spouse, former spouse or child of the debtor, in connection with a separation agreement, divorce decree, or property settlement agreement, for alimony to, maintenance for, or support of such spouse or child but not to the extent that the debt is assigned to another entity. If the debtor has assumed an obligation of the debtor's spouse to a third party in connection with a separation agreement, property settlement agreement, or divorce proceeding, such debt is dischargeable to the extent that payment of the debt by the debtor is not actually in the nature of alimony, maintenance, or support of debtor's spouse, former spouse, or child.

*See* 2005 Acts. H.R. Rep. No. 109-31, pt. I, *reprinted in* 2005 U.S.C.C.A.N. 88.

former Section 523(a)(5); therefore, case law construing the former Section 523(a)(5) is relevant and persuasive." *In re Johnson*, No. 07-51275, 2008 WL 553221, *5 (Bankr. M.D.N.C. Feb. 27, 2008 ) (citing *In re Hudson*, No. 06-81745, 2007 WL 4219421, *2 (Bankr. C.D. Ill. Nov. 27, 2007); *In re Lepley*, No.07-20344, 2007 WL 2669128, *3 (Bankr. W.D. Mo. Sept. 6, 2007); *In re Knox*, No. 07-11082, 2007 WL 1541957, *2 (Bankr. E.D. Tenn. May 23, 2007); *In the Matter of Dankert*, No. 07-40109, slip op. at 3 (Bankr. D. Neb. Sept. 27, 2007) (stating that BAPCPA did not change the standard for whether an obligation is in the nature of support)). *In re Lepley*, No.07-20344, 2007 WL 2669128, *3, and *In re Knox*, No. 07-11082, 2007 WL 1541957, *2, note that the term is derived in "significant part" from the definition of former Section 523(a)(5).

Former Section 523, provided, in relevant part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
>
> * * * *
>
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that-
>
> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

The Department maintains that the food stamp benefits that Ratliff received are a "domestic support obligation" within the plain meaning of 11 U.S.C. § 101(14A). It contends that Congress's distinction between domestic support obligations owed directly to a spouse, former spouse or child of the debtor and those owed directly to governmental units and the differing treatment afforded to such claims under 11 U.S.C. § 507(a)(1)(A) and 11 U.S.C. § 507(a)(1)(B), supports the conclusion that debts recoverable for support previously provided, such as the food stamp overpayments at issue in this appeal, are domestic support obligations.

Asserting that the bankruptcy court interpreted "domestic support obligation" as limited to obligations arising in a "traditional" family law context, rendering much of the term's statutory definition superfluous, the Department maintains that the terms "maintenance and support" have a far broader meaning under the Code, evidencing Congress's intent that support, such as its claim for food stamp overpayments, is a form of domestic support obligation.

In contrast, Ratliff maintains that the debt does not qualify as a domestic support obligation because it does not meet the requirement of § 101(14A)(B) that the debt must be "in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor." Ratliff argues § 101(14A) is designed to limit the application of a domestic support obligation "to situations

9

where the government steps in and provides support for a spouse, former spouse, or child of a debtor." (Appellee's Br. 5.) Ratliff maintains that the Department did not provide food stamps because she is a spouse, former spouse, or because she has children. (*Id.*)

Ratliff also asserts that the language of 11 U.S.C. § 507(a)(1)(A) does not allow priority status to the Department's claim and that, with respect to 11 U.S.C. § 507(a)(1)(B), even if the Department's claim is deemed a domestic support obligation, Congress limited priority status to those governmental claims where the government is acting on behalf of an obligated party and providing support to a spouse, former spouse, or child of the debtor. Ratliff maintains that the Department's interpretation is overreaching and incorrect.

Questions of dischargeability and the interpretation of the bankruptcy code are to be determined under the federal bankruptcy laws, not state law. *In re Reines*, 142 F.3d 970, 972 (7th Cir. 1998); *Matter of Seibert*, 914 F.2d 102, 106 (7th Cir. 1990) (citing *In re Williams*, 703 F.2d 1055, 1057 (8th Cir. 1983); S.Rep. No. 989, 95th Cong., 2d Sess. 79, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865; H.R.Rep. No. 595, 95th Cong., 1st Sess. 364, *reprinted in* U.S.C.C.A.N. 5963, 6320). This appeal involves the construction of the term "domestic support obligation" and its application to the facts of this case. Statutory construction begins with the wording of the statute. *Colon v. Option One Mortgage Corp.*, 319 F.3d 912, 916-17 (7th Cir. 2003). If the wording of the statute is clear, that is the end of the matter. *Id.*

For the overpayment debt to be considered a "domestic support obligation," the debt must be: (1) owed to or recoverable by a governmental unit; (2) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated; (3) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of an order of a court of record or a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and (4) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt. The definition has four separate requirements; all four must be met for an obligation to be considered a domestic support obligation. *In re Forgette*, 379 B.R. 623, 625 (Bankr. W.D. Va. 2007).

The only contested element of the "domestic support obligation" definition is whether the debt claimed by the Department is "in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated." In the words of one respected bankruptcy treatise, "[t]he term 'support' includes the somewhat archaic distinctions between alimony owed to a former spouse, maintenance owed to a legally separated spouse, and support owed to a spouse or child. The

11

bankruptcy code provides little in the way of definitional support." 3 Hon. William L. Norton, Jr. & William L. Norton III, *Norton Bankruptcy Law and Practice* § 57.30 (3rd ed. 2008).

Another respected bankruptcy treatise states: "The new [domestic support obligation] definition encompasses debts that were considered alimony, maintenance or support under prior section 523(a)(5), but is broader in several respects." 2 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 101(14A) (15th rev. ed. 2008). That treatise also observes: "This broad definition was undoubtedly intended to include debts to governmental units that were not always considered within the ambit of section 523(a)(5) under prior law.[6]" *Id*.

The *Bankruptcy and Domestic Relations Manual* states:

> The definition then moves beyond the former Code section to domestic support obligations that are "owed to or recoverable by . . . a governmental unit." Thus, assuming that the debt is in fact a domestic support one and that it meets the other criteria of section 101(14A), even though the debt is neither owed to or recoverable by the relatives of the debtor, it may be nondischargeable upon a complaint filed by a governmental unit. Typically, this would mean that if some governmental unit had provided benefits that had the effect of supporting the debtor's spouse, former spouse, or child, those benefits would fall within the definition of domestic support obligation and would be covered by section 523(a)(5).

---

[6]*See*, *e.g.*, *DeKalb County Div. of Family & Children Services v. Platter* (*In re Platter*), 140 F.3d 676 (7th Cir. 1998) (debt owed to state to reimburse costs of residential treatment for debtor's child was dischargeable).

12

William Houston Brown, *Bankruptcy and Domestic Relations Manual*, § 6.4 (2007). *See also* Philip L. Strauss and Karen Cordry, *Domestic Support Issues From a Governmental Perspective*, 41 Fam. L.Q. 321. 326-31 (Summer 2007).

*In re O'Brien*, 339 B.R. at 531, cited by the bankruptcy court in its order sustaining Ratliff's objection to the Department's claim of priority status, presented the question of "whether and under what circumstances are debts owed by a debtor to his own lawyer or on the account of his former wife's lawyer for services in a divorce related action domestic support obligations under the bankruptcy code." In summarizing the definition of "domestic support obligation," the *O'Brien* court did not mention the references to governmental units. *Id*.[7]

*In re Seibert*, 914 F.2d at 105, a pre-BAPCPA decision, addressed whether the expenses of "pregnancy and confinement" were a debt owed to a child for the child's support, noting that medical expenses are in the nature of support. In its discussion, the court of appeals for this circuit observed that courts have found that not only support in the traditional sense of periodic child support is nondischargeable, but that debts in the nature of support are also non-dischargeable. *Id*. (citing *In re Harrell*, 754 F.2d 902, 904 (11th Cir. 1985); *In re Valls*, 79 B.R. 270, 271 (Bankr. W.D. La. 1987)).

With respect to the former Section 523(a)(5), the court of appeals for this circuit held that: "[i]n order to establish whether a debt related to a minor child is dischargeable under § 523(a)(5), a court must determine 1) whether the obligation is a debt to the child or validly

---

[7]Neither party discusses *O'Brien*.

13

assigned by the child to a governmental entity and 2) whether the obligation is one of support." *In re Platter*, 140 F.3d 676, 681 (7th Cir. 1998). In *Platter*, the debtor sought to discharge a support obligation owed to the Department of Family and Children Services for sums the agency had paid to support the debtor's child in a residential treatment program. The court held that the plain meaning of § 523(a)(5) did not cover the situation where the debtor owed a governmental agency **directly** for the support of the debtor's child. *Id. See also*, *Green County Corp. Counsel v. Kline*, Nos. 05-17777-7, 05-252-7, 2006 WL 2882951, *1(Bankr. W.D. Wis. April 12, 2006) (holding, under former § 523(a)(5), that a debt owed to the county for unpaid guardian *ad litem* fees was not a debt to the child).

The Department's claim arises from its determination that Ratliff received food stamp overpayments. In considering the nature of the food stamps, the Court notes that the federally-funded food stamp program provides food stamps to low-income households to alleviate hunger and malnutrition among the economically disadvantaged. *See Stone v. Hamilton*, 308 F.3d 751, 752 (7th Cir. 2002) (citing 7 U.S.C. § 2011); *See also*, 7 C.F.R. § 271.1(a). Congress authorized the food stamp program in 7 U.S.C. §§ 2011 through 2036. Although funded by the federal government, each state must administer the program in compliance with the Federal Food Stamp Act and the accompanying regulations. *Stone*, 308 F.3d at 752 (citing 7 U.S.C. § 2020, 7 C.F.R. § 273.18(a)(2)-(3)).

Section 2022 of Title 7 of the United States Code provides for the recovery of food stamp overpayments. The majority of funds collected by a state as an overpayment are turned over to the federal government. *See* 7 U.S.C. § 2025. However, § 49.793(2) of the

14
Case 2:07-cv-00980-RTR   Filed 06/04/08   Page 14 of 19   Document 11

Wisconsin Statutes further states that the Department may allow counties to retain a portion of the amount of the overpayment that the state is permitted to retain under 7 U.S.C. § 2025.

The Department claims overpayment of food stamps that were used to support Ratliff's children. The benefit amount was based, in part, on the presence of Ratliff's three children within her household. *See* 7 C.F.R. §§ 273.1(a), 273.1(b)(1), 273.10, 273.12. Those food stamps enabled Ratliff to obtain food, a basic form of support for them. *See In re Gianakas*, 917 F.2d 759, 763 (3rd Cir. 1990) (stating "[a]n obligation that serves to maintain daily necessities such as food, housing and transportation is indicative of a debt intended to be in the nature of support." (citing *In re Yeates*, 807 F.2d 874, 879 (10th Cir. 1986))). Thus, the Court concludes that the food stamp overpayment was in "the nature of support" of the children of the Debtor, Ratliff. [8]

Ratliff asserts that the food stamp overpayment should not be deemed to be support because as overpayments the food stamps benefits exceeded that needed to support the family. Ratliff cites no case law in support of her contention. Nor has this Court found any reported case law on the issue.

However, the Court notes that, at the time of their issuance, the food stamps were allocated to Ratliff for the support of her children (and her own) based on her income

---

[8] The Court's conclusion is in accord with the conclusions on similar issues reached in other bankruptcy actions in this district. These determinations are not binding on the issue, but they are of interest. Overpayments of child care payments benefits claimed by the Department were found to be domestic support obligations, under § 101(14A) (ii), and to qualify as priority claims under section 507(a)(1)(B). *See* Appellant's Br., A. App. 103 (*In re Howard*, 07-20875-MDM, Court Minutes and Order (Bankr. E.D. Aug. 20, 2007)). *See also*, Docket No. 10 (*State of Wisconsin v. Keller*, Adv. No. 07-02312 jes, Order for Judgment (Bankr. E.D. Wis. Feb. 21, 2008) (holding, following a hearing on the Department's motion for default judgment, that the Department's claim for food stamp overpayments constituted a domestic support obligation and, therefore, was non-dischargeable under 11 U.S.C. § 523(a)(5)).)

15

and reported household size. In determining whether an obligation is for alimony, maintenance, or support, the majority of courts confine their assessment of the issue to the time the obligation is established. *See generally*, *In re Harrell*, 754 F.2d 902, 906-07 (11th Cir. 1985) (confining the inquiry under the discharge provision of § 523(a)(5) to whether the obligation arose out of, or in any way expresses, the duty of support); *Draper v. Draper*, 790 F.2d 52, 53-55 (8th Cir. 1986) (same); *Forsdick v. Turgeon*, 812 F.2d 801, 803-04 (2nd Cir. 1987) (same); *Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir. 1989)(same); *In re Gianakas*, 917 F.2d at 763 (same). *See also*, *In re Messnick*, 104 B.R. 89, 92 (Bankr. E.D. Wis. 1989); *Bowman v. Strack*, Nos. 92-13420-7, A94-1089-7, 1994 WL 16005181, *4 (Bankr. W. D. Wis. 1994) (noting every Court of Appeals to address the issue has rejected *In re Calhoun*, 715 F.2d 1103, 1109 (6th Cir. 1983) three-part test[9] and held that the bankruptcy court is to look only at the circumstances of the parties at the time of the divorce, not their present needs.) Applying the principle in this context, this Court concludes that the food stamps overpayments were for the support of Ratliff's children.

While the other prongs of a "domestic support obligation" are not contested on appeal, the Court completes the analysis by finding first that the amount is owed to a

---

[9]*Calhoun*, 715 F.2d at 1109-10, established a three-step analysis to determine whether a debtor's prepetition assumption of a debt in connection with a divorce settlement was nondischargeable because it is in the nature of alimony, maintenance or support. The initial inquiry is whether the state court or the parties intended to create an obligation providing support through the assumption of joint debts. If not, the obligation is dischargeable. However, if assumption of the joint debts was intended to provide support, the bankruptcy court must then determine whether the assumption "has the effect of providing the support necessary to ensure that the daily needs of the former spouse and any children of the marriage are satisfied." *Id*. at 1109. If the loan assumption is not necessary to provide support the obligation is dischargeable. However, if the loan assumption does provide necessary support, the bankruptcy court must "finally determine that the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support. Such an excessive allowance is at odds with the fresh start concept underlying federal bankruptcy law." *Id*. at 1110.

16
Case 2:07-cv-00980-RTR   Filed 06/04/08   Page 16 of 19   Document 11

governmental unit; that is, the Department. *See* 11 U.S.C. § 101(14A)(A)(ii). Second, the debt was established before the order for relief by reason of a determination made in accordance with applicable nonbankruptcy law by the Department. *See* 11 U.S.C. § 101(14A)(C)(iii). Finally, the debt was not assigned to a governmental entity. *See* 11 U.S.C. § 101(14A)(D). Based on the foregoing, this Court concludes Ratliff's debt to the Department for the overpayment of support, in the form of food stamps, falls within the ambit of the definition of a "domestic support obligation" under § 101(14A).

The next question is whether, under 11 U.S.C. § 507(a)(1), the Department's claim qualifies for priority status. Section 507(a)(1)(A) provides that the first priority is afforded to allowed unsecured claims for domestic support obligations "that, as of the date of the filing of the bankruptcy petition, **are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative**, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person," on the condition that such funds received under the paragraph by a governmental unit must be applied and distributed in accordance with applicable nonbankruptcy law. (emphasis added). The Department's claim does not qualify as a first priority claim under § 507(a)(1)(A) because the domestic support obligation was not owed to or recoverable by Ratliff's children as of the date Ratliff filed the petition.

However, § 507(a)(1)(B) provides that, subject to claims under § 507(a)(1)(A), priority is to be afforded to "allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition, . . . are owed directly to or recoverable by a

governmental unit under applicable nonbankruptcy law, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition be applied and distributed in accordance with applicable nonbankruptcy law." As of the date Ratliff filed her Chapter 13 petition, the Department had an unsecured claim for food stamp overpayments which were owed directly to or recoverable by the Department. Furthermore, the recovered funds will be applied and distributed in accordance with applicable nonbankruptcy law; specifically, the applicable rules and regulations governing the distribution of food stamp overpayments which are recovered by the Department.

Therefore, the Department's appeal is granted. The Department's claim for food stamp overpayments should be afforded priority status under § 507(a)(1)(B). The bankruptcy court's order finding that the Department's claim for food stamp overpayments is not a domestic support obligation under 11 U.S.C. § 101(14A) and that the Department's claim does not qualify for priority status under 11 U.S.C. § 507(a)(1) is reversed and this matter is remanded to the bankruptcy court for further proceedings consistent with this Decision and Order.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Department's appeal is **GRANTED**;

The bankruptcy court's order finding that the Department's claim for food stamp overpayments is not a domestic support obligation under 11 U.S.C. § 101(14A) and that the

18
Case 2:07-cv-00980-RTR   Filed 06/04/08   Page 18 of 19   Document 11

governmental unit under applicable nonbankruptcy law, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition be applied and distributed in accordance with applicable nonbankruptcy law." As of the date Ratliff filed her Chapter 13 petition, the Department had an unsecured claim for food stamp overpayments which were owed directly to or recoverable by the Department. Furthermore, the recovered funds will be applied and distributed in accordance with applicable nonbankruptcy law; specifically, the applicable rules and regulations governing the distribution of food stamp overpayments which are recovered by the Department.

Therefore, the Department's appeal is granted. The Department's claim for food stamp overpayments should be afforded priority status under § 507(a)(1)(B). The bankruptcy court's order finding that the Department's claim for food stamp overpayments is not a domestic support obligation under 11 U.S.C. § 101(14A) and that the Department's claim does not qualify for priority status under 11 U.S.C. § 507(a)(1) is reversed and this matter is remanded to the bankruptcy court for further proceedings consistent with this Decision and Order.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Department's appeal is **GRANTED**;

The bankruptcy court's order finding that the Department's claim for food stamp overpayments is not a domestic support obligation under 11 U.S.C. § 101(14A) and that the

Department's claim does not qualify for priority status under 11 U.S.C. § 507(a)(1) is **REVERSED**;

The matter is **REMANDED** to the bankruptcy court for further proceedings consistent with this Decision and Order;

The Clerk of Court is **DIRECTED** to provide the bankruptcy court with a copy of this Decision and Order; and

This appeal is **DISMISSED**.

Dated at Milwaukee, Wisconsin this 4th day of June, 2008.

**BY THE COURT**

*s/ Rudolph T. Randa*
**Hon. Rudolph T. Randa
Chief Judge**